# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

LeMar A. Gant,

    Petitioner

v.

Brian Williams, et al.,

    Respondents

Case No.: 2:16-cv-00528-JAD-NJK

**Order Denying Petition**

[ECF No. 5]

Petitioner LeMar Gant petitions under 28 U.S.C. § 2254 to challenge his 2012 state-court judgment of conviction for being an ex-felon in possession of a firearm.[1] Several of Gant's claims have been dismissed, and the others have been consolidated. I now deny the surviving claims on their merits.

## Background

On October 25, 2011, Gant was pulled over by Las Vegas Metropolitan Police Officer David Denton for failing to use a turn signal. When the officer asked if there was anything illegal in the car, Gant said there might be a smoking pipe but gave him permission to search anyway. The officer searched the car and found a handgun in a black holster wrapped in a bandana under the hood. Gant, an ex-felon, was charged with being an ex-felon in possession of a firearm.[2]

---

[1] ECF No. 5.

[2] Ex. 2; Ex. 25 (Tr. 7–17). The exhibits cited in this order, comprising the relevant state court record, are located at ECF Nos. 10–14.

Two weeks before trial, Gant's defense attorney disclosed four witnesses, including Matthew Merry.[3] Two days later, the State filed a supplemental notice of witnesses that identified the Henderson Detention Center's custodian of records.[4]

At trial, counsel stipulated to Gant's status as an ex-felon.[5] A forensic expert for the State testified that the major DNA profile pulled from the gun was consistent with Gant's DNA.[6] Gant called Merry as his only witness. He claimed responsibility for the gun being in the hood of the car on the day Gant was arrested, testifying that on the day of Gant's arrest, Gant gave Merry a ride and that Merry hid a gun, which he wrapped in Gant's bandana, in the hood of the car without Gant's knowledge.[7] On cross-examination, the State asked Merry whether he'd be surprised to learn he had been in custody on the day in question and Merry responded that he would.[8]

Gant elected not to testify, and the defense rested.[9] The State then called the custodian of records for Henderson Detention Center, who testified that Merry had been in custody on—and for several days around—the date he claimed to have placed the gun in the car.[10] In closing arguments, defense counsel ignored Merry's testimony and asserted that "this is simply a DNA

---

[3] Ex. 19.
[4] Ex. 20.
[5] Ex. 21 (Tr. 3).
[6] Ex. 25 (Tr. 50–69).
[7] *Id.* (Tr. 82–90).
[8] *Id.* at 98–99.
[9] *Id.* at 104–06.
[10] *Id.* at 107–09.

case," and argued that the only thing tying Gant to the gun was DNA and that Gant's DNA could be explained by transfer from the bandana.[11] The jury found Gant guilty.[12]

Gant was sentenced, judgment was entered, and Gant appealed.[13] The Nevada Supreme Court affirmed.[14] Gant filed a postconviction habeas petition in state court, which resulted in an evidentiary hearing at which both Gant and his trial counsel testified.[15] Following the hearing, the trial court denied relief, and the Nevada Court of Appeals affirmed.[16]

Gant then initiated this federal habeas corpus petition. Three claims remain: (1) that counsel improperly denied or influenced Gant to give up his right to testify by calling Merry; (2) that counsel was ineffective for failing to investigate Merry before calling him to the stand; and (3) that counsel was ineffective for failing to investigate the DNA evidence or to obtain and call a DNA expert.[17] I consider each in turn.

## Legal Standard

28 U.S.C. § 2254(d) provides the legal standards for consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[11] *Id.* at 121.
[12] *Id.* at 127; Ex. 27.
[13] Exs. 30, 31 & 33.
[14] Ex. 55.
[15] Exs. 60, 66 & 71.
[16] Exs. 81 & 91.
[17] Gant's seven remaining claims have been consolidated into these three claims.

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Antiterrorism and Effective Death Penalty Act (AEDPA) "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."[18] A federal court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."[19] The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."[20]

A state-court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."[21]

A state-court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."[22] The "unreasonable application" clause

---

[18] *Bell v. Cone,* 535 U.S. 685, 693–694 (2002).

[19] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[20] *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted.)

[21] *Andrade*, 538 U.S. at 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

[22] *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413).

4

requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable.[23]

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review.[24] This clause requires that the federal courts "must be particularly deferential" to state court factual determinations.[25] The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous."[26] Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.[27]

Under 28 U.S.C. § 2254(e)(1), state-court factual findings are presumed correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief.[28] State courts' decisions on the merits are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree."[29]

---

[23] *Id.* (quoting *Williams*, 529 U.S. at 409).
[24] *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).
[25] *Id.*
[26] *Id.* at 973.
[27] *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.
[28] *Cullen*, 563 U.S. at 181.
[29] *Davis v. Ayala*, ___ U.S. ___, 135 S. Ct. 2187, 2208 (2015).

**Analysis of Gant's Claims**

**A.    Grounds 2 and 9**

In Ground 2, Gant alleges that his trial counsel was ineffective because he denied Gant his right to testify in "exchange for" Merry's perjured testimony.[30] In Ground 9, Gant asserts that trial counsel unduly influenced him to give up his right to testify by promising that Merry's testimony would win the case.[31] The Nevada Court of Appeals rejected these claims, holding that Gant failed to "demonstrate counsel's performance was deficient or resulting prejudice."[32] It found that the trial court informed Gant he had the right to testify and that the decision whether to testify was his alone, and that Gant acknowledged he had discussed the decision with counsel and understood that he had to decide whether to testify.[33] The Court of Appeals also noted that Gant's lengthy criminal history would have been probed on cross-examination if he had testified. This fact, combined with his statements to the trial court, led the Court of Appeals to conclude that Gant failed to demonstrate that counsel improperly influenced him not to testify or that there was a reasonable probability of a different outcome had counsel acted differently with respect to Gant's potential testimony.[34]

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, which requires a petitioner to satisfy two elements to obtain habeas relief: (1) deficient performance by counsel and (2) prejudice.[35] Under the deficient-performance element, a petitioner must

---

[30] ECF No. 5 at 8.
[31] *Id.* at 47.
[32] Ex. 91 at 4.
[33] *Id.*
[34] *Id.*
[35] *Strickland v. Washington*, 466 U.S. 669, 687 (1984).

6

demonstrate that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness."[36] In reviewing counsel's conduct, a court "must be highly deferential" and " indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[37] For the prejudice element, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors."[38] Because of the deference owed to state-court decisions on the merits and the deference owed to counsel's performance, the United States Supreme Court has described federal judicial review of state court decisions about ineffective assistance of counsel as "doubly deferential."[39]

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts. The state courts applied the correct standard and came to an objectively reasonable conclusion. To the extent Gant alleges counsel "discouraged" him from testifying, it was not unreasonable for counsel to have done so. Gant had several prior felonies, the nature and number of which could have been discussed during cross-examination had he testified, so it was reasonable for counsel to avoid the risk of prejudice from discussion of Gant's prior felonies.[40] To the extent Gant asserts counsel

---

[36] *Id.* at 688.

[37] *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation and quotation marks omitted).

[38] *Strickland*, 466 at 696.

[39] *Knowles*, 556 U.S. at 123.

[40] Gant's position that counsel admitted that Gant was guilty of the crime charged is without merit because counsel did not admit that Gant was guilty of being an ex-felon in possession of a firearm. Counsel admitted only that Gant was an ex-felon, which was a fact that would have been easily proven—potentially by more prejudicial means—absent counsel's stipulation.

7

"prohibited" him from testifying, Gant acknowledged that he knew the decision to testify was his alone, and he did not at any point tell the trial court that he wanted to testify.[41]

Gant's main argument is that he didn't have a meaningful choice whether to testify because Merry's testimony conflicted with Gant's story that Officer Denton had planted the gun, and, even absent this conflict, Merry's testimony destroyed the credibility of Gant's version of events. While I am not certain that the state courts correctly concluded that Gant suffered no prejudice from counsel's decision to have Merry testify, this claim need not be resolved on those grounds. Gant has not shown that counsel was deficient in calling Merry to testify, regardless of whether Gant would have testified absent Merry's testimony or whether the outcome of the proceedings had a reasonable probability of being different if he had done so. Counsel testified at the evidentiary hearing that Merry had a reasonable story and that he thought it was an easier sell than Gant's.[42] Further, the state courts found counsel credible when he testified that he told Gant about Merry's testimony and Gant expressed no confusion or hesitation about having Merry testify, nor did he give counsel reason to second guess the decision to call Merry.[43] Contrary to Gant's contention, the state courts were correct that Gant's own conduct was a relevant part of the totality of the circumstances under which his counsel's choices must be evaluated.

Given Gant's failure to raise any concerns about Merry's testimony and the strategic benefits counsel saw in calling Merry over Gant, counsel's decision to call Merry did not fall below the wide range of reasonable representation.[44] The state courts were therefore not

---

[41] Ex. 25 (Tr. 105).
[42] Ex. 71 (Tr. 46).
[43] *Id.* at 66–67; Ex. 91 at 3.
[44] Counsel testified that had Merry not testified, he would have called Gant and the other two witnesses who were in the car with Gant, who would have testified they saw the officer take the

8

objectively unreasonable in rejecting this claim, and Gant is not entitled to relief on Grounds 2 and 9.

### B. Grounds 3, 5, and 10

In Ground 3, Gant asserts that his trial counsel was ineffective for knowingly introducing Merry's perjured testimony, which Gant claims his trial counsel fabricated.[45] In Ground 5, Gant asserts that counsel failed to conduct a basic investigation before trial, specifically about Merry.[46] And in Ground 10, Gant asserts that counsel and the investigator failed to conduct a criminal-records check of Merry or investigate why the custodian of records for Henderson Detention Center was listed as a witness by the State.[47]

The Nevada Court of Appeals rejected these claims, holding that Gant failed to "demonstrate the district court misapplied the standard for ineffective assistance of counsel for this claim."[48] It found that Gant's trial counsel told Gant of Merry's potential testimony and that Gant never told counsel that Merry's version of events wasn't truthful. The Court of Appeals noted that it wasn't until trial that defense counsel found out that Merry had actually been in the Henderson Detention Center on the day Gant was arrested. Defense counsel testified that he could have looked into the truthfulness of Merry's potential testimony, but Gant had given him no reason to believe Merry's testimony would be untruthful. The Court of Appeals held that, given Gant's knowledge about the truthfulness of Merry's potential testimony, Gant didn't meet his burden to demonstrate that his counsel acted unreasonably.

---

bandana out of the back of the car, walk to the hood, and then return with the gun wrapped in the bandana. Ex. 71 (Tr. 30–33).

[45] ECF No. 5 at 14–18.
[46] *Id.* at 28–29.
[47] *Id.* at 52–53.
[48] Ex. 91 at 2–3.

9

As to Gant's argument that the district court misapplied the *Strickland* standard by considering Gant's conduct while evaluating counsel's performance, the Court of Appeals held that the district court properly considered all the circumstances of counsel's decision not to investigate.[49] This conclusion was not objectively unreasonable. First, there is no evidence that counsel fabricated Merry's testimony, coached him on what to say, or knew his testimony was going to be perjured. Additionally, except with respect to Merry, Gant's failure-to-investigate claim is conclusory. And Gant's argument that his conviction was obtained through the knowing use of perjured testimony is wholly meritless because there is no evidence that anyone lied about the evidence underlying Gant's guilt, and the only person who did lie—Merry—did so in an attempt to exonerate Gant. These claims therefore lack merit, and the state courts were reasonable in rejecting them.

As to the claim that counsel was ineffective for failing to investigate Merry, Gant has not identified any reason that counsel should have been aware of a reason to investigate Merry, other than the supplemental notice of witnesses. Gant, who admits that he knew Merry had not been around the car that day, could—and should—have given counsel reason to doubt Merry's testimony but failed to do so.[50] As to the supplemental notice, counsel testified that he did not receive or see the supplemental notice of witnesses before trial. The state courts did not make any explicit finding whether counsel was credible in this regard, but it is the petitioner's burden to show "there was no reasonable basis for the state court to deny relief."[51] The state courts were not objectively unreasonable in rejecting this claim because (1) it would have been reasonable to

---

[49] *Id.* at n.1.
[50] *Id.* at 54–64.
[51] *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

deny relief if the state courts concluded that counsel never received the supplemental notice of witnesses and (2) Gant points to nothing else in the case that could have alerted counsel to Merry's impending perjury. Gant is thus not entitled to relief on Grounds 3, 5, and 10. However, because the question is close, I will grant Gant a certificate of appealability with respect to this claim.

### C. Grounds 4 and 8

In Ground 4, Gant alleges that counsel failed to conduct an independent DNA test of the evidence or call an expert witness to testify that the DNA on the firearm came from someone using Gant's bandana to wipe down the firearm.[52] In Ground 8, Gant asserts that a DNA expert would have been useful at trial, that he was prejudiced because counsel argued that this was a DNA case in closing arguments, and that if counsel had hired a DNA expert, he would have had at least some defense after the Merry debacle.[53] The Nevada Court of Appeals rejected this claim, holding that Gant failed to demonstrate that his counsel's decision not to retain a defense DNA expert was deficient or resulted in prejudice.[54]

Defense counsel testified at the evidentiary hearing that he didn't retain an expert because he believed he could demonstrate that Gant's DNA was on the gun because of a transfer from the bandana. The Court of Appeals noted that "[t]actical decisions such as this one 'are virtually unchallengeable absent extraordinary circumstances,'"[55] and that Gant failed to meet that standard. It also held that Gant failed to demonstrate a reasonable probability of a different outcome at trial had his counsel retained a DNA expert because Gant didn't show that further

---

[52] ECF No. 5 at 21–25.
[53] ECF No. 5 at 43–45.
[54] Ex. 81 at 2.
[55] *Id*. (quoting *Ford v. State*, 784 P.2d 951, 953 (1989)).

11

expert testimony would have been favorable to his defense.[56] This conclusion was not objectively unreasonable.

At trial, the State's expert testified that the holster returned a mixture of DNA from at least three persons, but, given the variety of DNA present, almost no one could be excluded as a contributor—Gant included. But while the gun also had a mixture of DNA, a major DNA profile could be pulled from it and that profile was consistent with Gant's DNA. The expert did not test the bandana for DNA.[57] On cross-examination by defense counsel, the following exchange took place:

> Q: And it's also possible that the DNA could have come off of the handkerchief and onto the weapon if there was a sufficient amount of DNA on that handkerchief and that handkerchief was used to – as being wrapped around the gun, it could be possible the that DNA could have transferred that way, isn't that correct?
>
> A: It's possible. But as I mentioned before, it's highly unlikely because we are talking about touch DNA. And so we're already starting out with a small amount of DNA, so for it to get transferred it's unlikely that I would get a major DNA profile from a person.
>
> Q: But again, if that DNA – there was a sufficient or a high amount of source of DNA on that handkerchief and that handkerchief was wrapped around the weapon, that increases the odds of seeing how much DNA would be transferred on the weapon, isn't that correct?
>
> A: Yes, it's possible. Yes.[58]

---

[56] *Id.*
[57] Ex. 25 (Tr. 50–69).
[58] *Id.* at 73.

On re-direct, the expert testified that if the DNA on the gun came from the bandana, she would expect to find a stronger DNA profile on the holster, as well.[59] At the evidentiary hearing on Gant's state habeas petition, counsel testified that he did not ask an expert to test the gun and holster for the DNA of the other individuals in the car because he thought that Gant's DNA on the gun could be explained by transfer from the bandana and he thought the other DNA on the gun and holster were irrelevant.[60]

Gant has shown neither prejudice nor deficient performance. He has not shown that an independent DNA test or expert testimony would have resulted in evidence in his favor. The State's expert testified that it was extremely unlikely that DNA could transfer in the manner asserted by counsel, and Gant has not shown that another DNA expert would have disagreed. Speculation that another expert would have testified in petitioner's favor is insufficient to establish prejudice.[61] Gant therefore cannot show that he was prejudiced by the lack of a DNA expert.

It was also a reasonable strategic decision for counsel to focus on creating doubt through cross-examination rather than expert testimony that might have been easily debunked, especially where, as here, the theory was not very strong. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation. When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict."[62] Gant's counsel got the expert to admit that DNA *could* be transferred from the bandana to the gun, though it was unlikely. This may be the most Gant could have hoped for,

---

[59] *Id.* at 79.
[60] Ex. 71 (Tr. 8).
[61] *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001).
[62] *Harrington v. Richter*, 562 U.S. 86, 111 (2011).

13

and he has not established here or before the state courts that alternative testimony that would have been favorable to his defense was available. The state courts were thus not objectively unreasonable in rejecting Gant's ineffective-assistance-of-counsel claim based on the failure to obtain a DNA expert. Accordingly, Gant is not entitled to relief on Ground 4 or 8.

## Certificate of Appealability

To proceed with an appeal, Gant must receive a certificate of appealability.[63] Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability.[64] "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[65] To meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason, that a court could resolve the issues differently, or that the questions are adequate to deserve encouragement to proceed further.[66]

I have considered the issues raised by Gant and whether they satisfy the standard for issuance of a certificate of appealability, and I conclude that only one meets this standard. I therefore grant a certificate of appealability only for Gant's claim that counsel was ineffective for failing to investigate Merry prior to calling him as a witness at trial.

## Conclusion

IT IS THEREFORE ORDERED that the petition (**ECF No. 5**) **is DENIED**, and this action is DISMISSED WITH PREJUDICE.

---

[63] 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950–951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551–52 (9th Cir. 2001).
[64] *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).
[65] *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484).
[66] *Id.*

14

IT IS FURTHER ORDERED that a certificate of appealability is GRANTED with respect to Gant's claim that counsel was ineffective for failing to investigate Merry prior to calling him at trial and is DENIED in all other respects.

The Clerk of the Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: January 14, 2019

_____
U.S. District Judge Jennifer A. Dorsey